IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

WRECKER WORKS, LLC, and                                                    PLAINTIFFS
STEPHANIE THOMPSON

V.                                                              CAUSE NO. 1:16-CV-117-SA-DAS

CITY OF ABERDEEN, MISSISSIPPI, and
HENRY RANDLE                                                               DEFENDANTS

MEMORANDUM OPINION

In their Amended Complaint [21], Stephanie Thompson and Wrecker Works, LLC allege

that the City of Aberdeen Mississippi, and City Police Chief Henry Randle, violated their

constitutional rights and maliciously interfered with their business. The City and Randle filed a

Motion for Summary Judgment [57] requesting that the Court grant summary judgment in their

favor on all of the Plaintiffs' claims. The Plaintiffs filed a response [62], and the Defendants replied

[67], making these issues ripe for review.[1]

*Factual and Procedural Background*

In the spring of 2016, Stephanie Thompson decided that she wanted to own a wrecker

service. Thinking that it would be easier to purchase an established local company instead of

starting her own, Thompson asked around and entered into talks with local businessperson Dean

Irvin about purchasing his wrecker company, Irvin Wrecker Service, LLC, that had been in

business in the Aberdeen area since 2009. In addition to its physical assets, mainly towing vehicles

and equipment, Irvin Wrecker Service had a small list of existing customers and was on rotation

with several insurance companies and nearby municipalities including the City of Aberdeen.

---

[1] The Plaintiffs also filed a request to supplement their summary judgment response with a recent Mississippi Supreme
Court case. *See* [34]. The Court granted this request and considered the supplement. *See* [65].

Being on rotation with Aberdeen meant that Irvin Wrecker Service was on a list of approved companies that the City Police Department would call and dispatch as needed to accidents and other situations where a vehicle needed to be recovered, towed, or transported. Irvin Wrecker Service was one of several companies on Aberdeen's rotation list. According to Irvin, the Aberdeen rotation list typically resulted in between one and three calls each week. The City had a Wrecker Service Ordinance in place since March of 2014. Under this ordinance, the City Clerk was responsible for some of the procedures and duties, in particular the list application process, while the Police Department handled dispatch and rotation.

On week later, on April 20, 2016, Thompson filed the required paperwork with the Secretary of State of Mississippi to establish a new company, Wrecker Works, LLC. Around this same time, Randle removed Irvin Wrecker Service from the rotation list after hearing that the company was sold. Although Irvin and Thompson were then in talks, the sale was not completed. Neither Irvin nor Thompson knew that Randle removed Irvin Wrecker Service from the rotation list.

On April 27, 2016, Thompson filed a request with the Aberdeen City Clerk to have Wrecker Works, LLC added to the wrecker rotation list. At their next regular meeting, May 3, 2016, the Aberdeen Board of Aldermen approved Wrecker Works' request. Interestingly, although the Board approved Wrecker Works in this case, the Wrecker Service Ordinance in place at that time does not require or provide for any approval process by the Board. According to the ordinance, the application and approval process goes through the City Clerk, the "investigating officer," and the Chief of Police. Two days later, on May 5, 2016, Irvin executed a sell agreement,

and Wrecker Works' new insurance policy became effective that same day.[2] According to the sell agreement, Irvin sold several vehicles, a variety of service equipment, several business telephone numbers, a few "existing customers," and ten "service providers" including the City of Aberdeen. The sell agreement also contains a "non-compete contract" stating that Dean Irvin would not compete with Wrecker Works in any way for five years. Notably, Irvin did not sell the name of the company or the LLC. It is undisputed that Irvin Wrecker Service dissolved after the sale and that Wrecker Works, LLC is a new and separate independent company.

At the next regular Board of Aldermen meeting on May 17, 2016 Chief Randle proposed a new Wrecker Service Policy. After a motion by Alderman Sykes, and a second from Alderman Ewing, the Board took the new policy under advisement by unanimous vote.

Around this same time, Thompson noticed that Wrecker Works was not receiving any calls from the Aberdeen Police Department. Thompson complained to Alderman Buffington who raised the issue with Chief Randle at the next Board meeting on June 7, 2016. At this same meeting, the Board approved the new Wrecker Service Policy previously proposed by Randle by unanimous vote. Soon after the Board approved the new policy, Wrecker Works began receiving the normal, expected volume of rotation calls.[3]

On June 27, 2016, Thompson and Wrecker Works filed this suit. In their Amended Complaint [21], the Plaintiffs allege three claims based on constitutional violations under 42 U.S.C. §1983 against both the City of Aberdeen and Randle in his individual capacity and one claim based on Mississippi law against Randle individually. First, the Plaintiffs allege that the Defendants took their liberty and property without due process in violation of the Procedural Due

---

[2] In their pleadings the Plaintiffs allege that Thompson made the purchase on May 3, 2016 but in her 30(b)(6) deposition Thompson states the purchase date as May 5, 2016 several times. The insurance policy shows an effective date of May 5, 2016 and the sell/purchase agreement is undated.
[3] There is some dispute in the record as to whether Wrecker Works' first call was on June 7, 2016 or June 10, 2016.

Process Clause of the Fourteenth Amendment to the United States Constitution. Second, the Plaintiffs allege that the Defendants' actions were irrational and arbitrary and not for any legitimate governmental purpose in violation of the Substantive Due Process Clause of the Fourteenth Amendment. Third, the Plaintiffs allege that the Defendants violated their rights protected by the Equal Protection Clause of the Fourteenth Amendment. Finally, the Plaintiffs allege a state law claim, that Randle maliciously interfered with their business.

*Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that

there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). This Court has no duty to "sift through the record in search of evidence to support" the nonmovant's opposition to summary judgment. *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)).

*Discussion and Analysis*

The Plaintiffs are seeking relief based on two separate factual bases. First, the Plaintiffs argue that the removal of Irvin Wrecker Works from the rotation list was a denial of due process that accrued to the Plaintiffs as the successors in interest of Irvin's business. The rest of the Plaintiffs claims are based on the delay between the time the Board approved Wrecker Works for the rotation list and the time when they started receiving calls, approximately one month.

Federal courts only have jurisdiction over "cases" or "controversies." *Williams v. Parker*, 843 F.3d 617, 620–21 (5th Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997) (quoting U.S. CONST. ART. III, § 2, cl. 1)). "There is no case or controversy without standing to sue." *Id*. Standing is a threshold issue that this Court considers before examining the merits of the claims. *Id*. (citing *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013)). As the parties invoking federal jurisdiction, the Plaintiffs must show:

> (1) that they suffered an injury in fact, which is a concrete and particularized invasion of a legally protected interest; (2) that the injury is traceable to the challenged action of the [defendant]; and (3) it is likely, rather than merely speculative, the injury will be redressed by a particular decision.

*Williams*, 843 F.3d at 620 (citing *Hollis v. Lynch*, 827 F.3d 436, 441 (5th Cir. 2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "If the party

invoking federal jurisdiction fails to establish any one of injury in fact, causation, or redressability, then federal courts cannot hear the [claim]." *Id.* (citing *Rivera v. Wyeth–Ayerst Labs.*, 283 F.3d 315, 318–19 (5th Cir. 2002)).

Based on the record in this case, the Plaintiffs do not have standing to sue for Irvin's removal from the rotation list. The only argument the Plaintiffs make to support their claim is that that they were the "successors in interest" to the assets of Irvin Wrecker Service. The Plaintiffs do not cite any evidence or authority to support this mere allegation. It is undisputed that the Plaintiffs did not purchase Irvin Wrecker Service, LLC and that Irvin Wrecker Service was dissolved when the Plaintiffs purchased its assets. It is undisputed that Irvin Wrecker Service was a separate, independent business, and that Thompson only purchased some of the assets of the company. When questioned in her 30(b)(6) deposition as to whether she had any interest in Irvin Wrecker Service, Thompson responded, "I did not." Although the sell agreement purports to sell the "City of Aberdeen Police" as a "service provider," it is undisputed that Irvin Wrecker Service was removed from the list before the sale took place, making such a transaction an impossibility.[4]

Based on these facts, the Plaintiffs cannot establish the "injury in fact" or "redressability" prongs of the standing inquiry. *See Williams*, 843 F.3d at 620; *Lujan*, 504 U.S. 555, 560–61, 112 S. Ct. 2130.[5] Thompson did not suffer an injury because she did not have an interest in Irvin Wrecker Service, was not entitled to its profits, and never purchased the corporation. As to redressability, any potential recovery would accrue to Irvin Wrecker Service and not to Thompson or Wrecker Works. Irvin Wrecker Service is not a party to this litigation. Because the Plaintiffs' lack standing relative to this claim, it is dismissed.

---

[4] The Court discusses the potential property interest in being on the rotation list in depth below.
[5] The Plaintiffs do not cite any authority in support of their argument that they are entitled to relief for Irvin's removal.

The Plaintiffs established standing for the remainder of their claims related to the delay in referrals, and the Court takes up the merits of these claims below.

*Constitutional Claims*

As noted above the Plaintiffs allege three claims based on constitutional violations against both the City of Aberdeen and Randle in his individual capacity. First, the Plaintiffs allege that the Defendants took their liberty and property without due process in violation of the Procedural Due Process Clause of the Fourteenth Amendment. Second, the Plaintiffs allege that the Defendants actions were arbitrary and capricious and not for any legitimate governmental purpose in violation of the Substantive Due Process Clause of the Fourteenth Amendment. Third, the Plaintiffs allege that the Defendants violated their rights protected by the Equal Protection Clause of the Fourteenth Amendment.

The Defendants argue that they did not violate the Plaintiffs' constitutional rights, that Randle is entitled to qualified immunity, and that the Plaintiffs did not sufficiently allege a policy or custom that could give rise to municipal liability.

*A. Due Process: Liberty and Property*

The Plaintiffs' due process claims are based on the delay between when Wrecker Works was approved for the rotation list by the Board and the time they were actually put into the rotation and started to receive calls. The City does not pay wrecker companies for their services. The City merely refers a wrecker company to a vehicle or incident using the rotation list, and the vehicle owner ultimately pays the towing and recovery fees. Relevant to their due process claims, the Plaintiffs argue that they have a liberty and property interest in being on the list and in the referral from the City.

The Due Process Clause of the Fourteenth Amendment states, in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. AMEND. XIV, § 1. To invoke the protections of the Fourteenth Amendment a plaintiff must have suffered a deprivation of life, liberty, or property. *Toler v. City of Greenville*, No. 4:96-CV-34-D, 1997 WL 332168, at *3 (N.D. Miss. June 4, 1997) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 935 (5th Cir. 1995); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991); *Board of Regents v. Roth*, 408 U.S. 564, 569, 92 S. Ct. 2701, 33 L. Ed. 548 (1972));

> In order for a person to have a property interest within the ambit of the Fourteenth Amendment, he must "have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."

*Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727, 735 (5th Cir. 2008); *Blackburn,* 42 F.3d at 936 (citing *Roth*, 408 U.S. at 577, 92 S. Ct. 2701). "Property interests are not created by the Constitution; rather, they stem from independent sources such as state statutes, local ordinances, existing rules, contractual provisions, or mutually explicit understandings." *Toler*, 1997 WL 332168, at *3; *Ridgely*, 512 F.3d at 735; *Blackburn*, 42 F.3d at 936–37 (citing *Perry v. Sinderman*, 408 U.S. 593, 599–601, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)). When a property interest is not based on a substantive federal law or statute, "the sufficiency of the claim of entitlement must be decided by reference to state law." *Toler*, 1997 WL 332168, at *3 (citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976); *Blackburn*, 42 F.3d at 937 n. 12).

Whether a wrecker rotation list may create a liberty or property interest is not a novel question in this Circuit. *See, i.e., Toler*, 1997 WL 332168; *Chavers v. Morrow*, 354 F. App'x 938, 941 (5th Cir. 2009).[6] The questions this Court must answer are first whether there is a local statute,

---

[6] The Court notes that *Chavers* considered this issue in the context of an appeal of a preliminary injunction. Although the ultimate burden of proof in that context is significantly different than it is in this summary judgment context, the *Chavers* Court's gathering of cases, and statements of substantive and applicable law are instructive here.

ordinance, or regulatory scheme governing the rotation list that could give rise to a protected interest, and if so, whether that ordinance or regulation contains the mandatory language required to confer the interest. *See Toler*, 1997 WL 332168; *Chavers*, 354 F. App'x at 941; *Ridgely*, 512 F.3d at 737. The Fifth Circuit held in *Chavers*, that an ordinance *could* give rise to a property interest only if the ordinance contained mandatory language placing "substantive limits on official discretion." *See Chavers*, 354 F. App'x at 941 (citing *Ridgely*, 512 F.3d at 735; *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983)).

In this case, the ordinance governing the towing rotation list is an official city ordinance adopted by the Board of Aldermen.[7] The Court finds that, similar to the ordinance in *Chavers*, this ordinance *could* give rise to a protected interest.

The relevant question then is whether the ordinance creates a protected interest. *Chavers*, 354 F. App'x at 941. "To determine whether statutes or regulations create a protected property interest, we must ask whether they place 'substantive limitations on official discretion.'" *Chavers*, 354 F. App'x at 941; *Ridgely,* 512 F.3d at 735 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983)). "In determining whether statutes and regulations limit official discretion, the Supreme Court has explained that we are to look for 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome *must* follow." *Id.* (emphasis added) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)).

---

[7] Because there is no state statute in Mississippi requiring municipalities to have wrecker rotation lists, the sole potential source of a protected interest in this case is the City Ordinance. The Mayor and Board of Aldermen adopted a "Wrecker Service Ordinance" on March 4, 2014. Although the Board adopted a new policy on June 7, 2016, the Plaintiffs agree they started receiving calls after the new policy was adopted, making the 2014 ordinance the only one relevant here.

Generally, the Court notes that the ordinance lacks mandatory language with regard to what is affirmatively required by the Police Department. It is also important to note that the injury that the Plaintiffs complain of is not that they were denied inclusion on the list, or that they were never given referrals. The Plaintiffs' complaint is that they were not given referrals as soon as the Board approved their request.[8] There was an approximate one-month delay between the Board's approval and their first referral. There is no mandatory language anywhere in the ordinance that stipulates any time limit or particular expediency with which companies must start receiving calls.

The relevant section, III(E(6)) states as follows:

> When the Investigating Officer is satisfied that the wrecker company is qualified, he will direct the City Clerk to issue the wrecker company an "Authorized Permit" and the Clerk will direct the Chief of Police to place the company on the City of Aberdeen Rotation list. Copies of all Permits shall be retained and remain on file in the Compliance Officer's and the City Clerk's Office and shall be available, upon request, for public inspection.

Notably, the ordinance does not use mandatory language when referencing the Chief's responsibilities. The ordinance does not say that the Chief has to put the company on the list, or remove the Chief's discretion. Here, just as in *Chavers* and *Toler* the Plaintiffs have merely alleged an "assumption of a right to . . . government business." Under this Ordinance, the Police Department maintained discretion as to when, or at a minimum how quickly, to place companies on the rotation list, and discretion to call or not any towing company on the list. This is insufficient to establish a property interest for purposes of due process.

The Plaintiffs also allege that they were deprived of a liberty interest in pursuing their occupation. The insertion of the word "liberty" for the word "property" does not alter the due process analysis. *See Toler*, 1997 WL 332168, at *3 n. 7; *Blackburn*, 42 F.3d at 941. The Plaintiffs

---

[8] As noted above there is a causation issue inherent in this argument because the ordinance in place at the relevant time did not require or provide for an approval process, or any involvement whatsoever, by the Board.

rely solely on *Phillips v. Vandygriff*, 711 F.2d 1217 (5th Cir. 1983), to support their argument that they had a liberty interest in timely referrals. The Plaintiffs reliance on *Phillips* here is misplaced. The plaintiff in *Phillips* was prevented from engaging in his occupation by a *de facto* licensing system that prevented him from acquiring *any* private employment in his profession. The *Blackburn* Court distinguished *Phillips* in the towing rotation list context on the basis that removal from a towing rotation list only limited that plaintiff's ability to receive government referrals and only affected a portion of that plaintiff's business. *Blackburn*, 42 F.3d at 941. The same is true here. The delay in referrals in this case only affected the Plaintiffs' ability to receive government referrals, and only affected a small portion, approximately ten percent, of their business. Put simply, based on the relevant precedent, the facts of this case do not implicate a liberty interest. *See id*.

Because the Plaintiffs did not have a protected liberty or property interest in receiving referrals, they are unable to establish a procedural or substantive due process claim. Even if the Plaintiffs did have a protected interest, they would still have to demonstrate that the Defendants' actions were arbitrary or capricious, and not a "rational means of advancing a legitimate government purpose" in order to establish a substantive due process violation. *Toler*, 1997 WL 332168, at *4 (citing *Fowler v. Smith*, 68 F.3d 124, 128 (5th Cir. 1995); *Spuler v. Pickar*, 958 F.2d 103, 107–08 (5th Cir. 1992)).

Randle acknowledges that he caused the delay, but argues that it was necessary because at the time Wrecker Works applied to be on the rotation list he was in the process of getting the Board to approve a new Wrecker Service Policy. Randle further argues that he wanted to make sure he had all of Wrecker Works' required information on file, and that they could comply with the new policy before referring calls to them. The Plaintiffs argue that Randle intentionally waited to put

Wrecker Works into the rotation out of malice to hurt Dean Irvin personally, and to interfere with the sale.[9]

The Court addressed the Plaintiffs' lack of standing relative to Irvin Wrecker Service above. Even so, it is undisputed that Randle was in the process of getting a new policy approved and implemented during this time. Randle presented his proposed Wrecker Service Policy to the Board on May 17, 2016 and that the Board took the proposed policy under advisement at that time. It is also undisputed that the Board approved the new policy on June 7, 2016. Wrecker Works began receiving regular rotation calls shortly thereafter.[10] The Plaintiffs have not brought forth any relevant evidence that demonstrates that Randle's actions were arbitrary or capricious. Further, the Court finds that the brief delay the Plaintiffs experienced in receiving referrals to ensure compliance is a rational means of advancing the legitimate governmental purpose of adopting and implementing a new, presumably improved policy.

Because the Plaintiffs failed to establish that they a protected liberty or property interest, and because they failed to bring forth any evidence of arbitrary or capricious action by the Defendants, their procedural and substantive due process claims fail. Summary judgment is granted in the Defendants' favor on both of these claims.

### B. Equal Protection

Next, the Plaintiffs allege that the Defendants violated their constitutional rights protected by the Equal Protection Clause. The Plaintiffs agree that because they are not a member of a particular class they are proceeding as a "class of one." *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). "A class-of-one equal protection claim

---

[9] The Plaintiffs outline a number of disputes between Randle, who at one time operated his own wrecker service and received referrals from the Department, and other companies including Irvin's. These disputes are not relevant here.
[10] As noted above, there is some dispute in the record as to whether Wrecker Works' first call was on June 7, 2016 or June 10, 2016.

lies 'where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 586 (5th Cir. 2016) (citing *Olech*, 528 U.S. at 564, 120 S. Ct. 1073). The class-of-one theory of recovery is available where there is "a clear standard against which departures, even for a single plaintiff, could be readily assessed." *Id.* (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 603, 128 S. Ct. 2146, 170 L. Ed. 2d 975 (2008)).

As noted above, the Defendants have articulated a rational basis for their actions, and the Plaintiffs failed to bring forth any evidence or argument to the contrary. *See Integrity Collision*, 837 F.3d at 586; *Olech*, 528 U.S. at 564, 120 S. Ct. 1073. The Defendants rely on *Integrity Collision* to support their argument that a class-of-one equal protection claim is not available in the tow rotation list context because the selection of companies for tow referrals involved too many discretionary decisions to "yield the same 'clear standard' by which an equal protection claim can be evaluated." *Integrity Collision*, 837 F.3d at 587 (quoting *Engquist*, 553 U.S. at 602–03, 128 S. Ct. 2146). Although the facts in *Integrity Collision* were quite different from the facts presented in this case, the Court finds the substantive law equally applicable here. As noted above, the ordinance in this case bestowed discretion in the Police Department as to which companies to select for towing referrals, and when to start making referrals to them. Because "[t]he Equal Protection Clause does not require 'displacement of managerial discretion by judicial supervision,'" the Court declines to do so here. *Integrity Collision*, 837 F.3d at 588 (quoting *Engquist*, 553 U.S. at 608–09, 128 S. Ct. 2146; *Garcetti v. Ceballos*, 547 U.S. 410, 423, 126 S. Ct. 1951, 164 L. Ed. 2d 689 (2006)).

Even if a class-of-one equal protection claim was available in this context, the Plaintiffs failed to bring forth any evidence that they were treated differently from others similarly situated, or that the Defendants' actions were motivated by discriminatory intent. *See Integrity Collision*, 837 F.3d at 586; *Olech*, 528 U.S. at 564, 120 S. Ct. 1073. Although the Plaintiffs assert they "were treated differently than all the other wrecking services," they offer no specifics or evidence to support this conclusory allegation. Because the Plaintiffs failed to establish several essential elements of their equal protection claim, summary judgment is granted in the Defendants favor on this claim.

*Qualified Immunity*

The Defendants also argue that Randle is entitled to qualified immunity on all of the Plaintiffs' constitutional claims. Qualified immunity protects government officials from liability for civil damages to the extent that their conduct is objectively reasonable in light of clearly established law. *Crostley v. Lamar Cty., Texas*, 717 F.3d 410, 422-24 (5th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004)). "[T]he usual summary judgment burden of proof is altered in the case of a qualified immunity defense." *Wolfe v. Meziere*, 566 F. App'x 353, 354 (5th Cir. 2014) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001)). "An [official] need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the [official]'s allegedly wrongful conduct violated clearly established law." *Id*. A plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id*.

"A plaintiff can overcome a qualified immunity defense by showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Allen v. Cisneros*, 815 F.3d 239, 244 (5th Cir. 2016) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011); *Harlow*, 457 U.S. at 818, 102 S. Ct. 2727).

Because the Court finds above that Randle did not violate the Plaintiffs' constitutional rights, Randle is entitled to qualified immunity here. *See id.* In addition, the Court notes that the Plaintiffs also failed to demonstrate that any alleged violation of their rights was clearly established. The Plaintiffs rely on *Bowlby v. City of Aberdeen, Miss.*, 681 F.3d 215, 222 (5th Cir. 2012) to support their argument that the "right to not be deprived of liberty or property" is clearly established. In *Bowlby* the Fifth Circuit found that the plaintiff stated a claim under Federal Rule of Civil Procedure 12(b)(6) for a due process violation when the City of Aberdeen revoked a sno-cone business owner's operation license and permits without first providing her notice and a hearing. The Plaintiffs in this case argue that Randle, as Chief of Police, was aware of the *Bowlby* decision and thus should have been on notice that his delay in giving referrals to Wrecker Works was a violation of a clearly established right.

The facts of the *Bowlby* decision are not "particularized" enough to "clearly establish" a right under the facts of the instant case. *See White v. Paul*y, – U.S. –, 137 S. Ct. 548, 552, 196 L. Ed. 2d 463 (2017); *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). As the Supreme Court has stated, qualified "immunity protects all but the plainly incompetent or those who knowingly violate the law." *White*, 137 S. Ct. at 551, 196 L. Ed. 2d 463 (citing *Mullenix v. Luna*, – U.S. –, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)) (internal

quotations omitted). "The clearly established law must be 'particularized' to the facts of the case. *Id.*, 196 L. Ed. 2d 463 (quoting *Creighton*, 483 U.S. at 640, 107 S. Ct. 3034).

*Municipal Liability: Policy or Custom*

In addition to their claims against Randle individually, the Plaintiffs also allege that the City is liable for his actions. The Plaintiffs argue that Randle is an elected, official policy maker for the City and therefore his actions are attributable to the City. The Defendants argue that the Plaintiffs cannot establish the requisite constitutional violation, and that Randle is not an official policy maker.

Generally, municipal liability may be based upon a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision. *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "[M]unicipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 346 (5th Cir. 2017), *as revised* (July 3, 2017) (citing *Piotrowski*, 237 F.3d at 578). Additionally, "[t]he policymaker must have either actual or constructive knowledge of the alleged policy" to be held liable. *Id.* (citing *Cox v. City of Dallas*, 430 F.3d 734, 748–49 (5th Cir. 2005)). The Court also notes, "A customary municipal policy cannot ordinarily be inferred from single constitutional violations." *Fontenot v. City of Houston*, 647 F. App'x 402, 405–06 (5th Cir. 2016) (citing *Piotrowski*, 237 F.3d at 581). "Isolated violations are not the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Id.* (citing *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (internal quotation omitted)).

Because the Court finds above that the Plaintiffs failed to establish the requisite constitutional violation claim in this case, their municipal liability claim likewise fails. *See Brinsdon*, 863 F.3d at 346; *Piotrowski*, 237 F.3d at 578.

*State Law Claim: Malicious Interference with Business Relations*

Finally, the Plaintiffs allege a claim under state law, specifically, that Randle maliciously interfered with their business. The Defendants argue that this claim fails because the Plaintiffs failed to comply with the pre-suit notice requirements of the Mississippi Tort Claims Act. *See* Miss. Code. Ann. § 11-46-11(1). The Plaintiffs acknowledge that they did not file pre-suit notice but argue that because the alleged tort of malicious interference with business relations is malice-based, it is not subject to the Tort Claims Act's pre-suit notice requirements.

After summary judgment briefing was complete in this case, the Mississippi Supreme Court handed down *Springer v. Ausbern Construction Co*, which appears to answer this question definitively. *Springer v. Ausbern Constr. Co.*, No. 2014-CT-01190-SCT, 2017 WL 4684628 (Miss. Oct. 19, 2017). The *Springer* Court held that because a claim for tortious interference with a business contract is malice-based, and that torts constituting malice are statutorily outside the "course and scope of employment," claims against individuals for tortious interference with a business contract are not subject to the Tort Claims Act's pre-suit notice requirements. *See* Miss. Code Ann. § 11-46-5(2); Miss. Code Ann. § 11-46-11(1); *Springer*, 2017 WL 4684628, at *7. It follows from this decision that the tort alleged here, malicious interference with business relations, also falls outside the pre-suit notice requirements of the Act. *See Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998) (outlining the elements of malicious interference with contract and business relations, and stating, "[T]he same legal standard with reference to the element of intent is applicable to either claim for tortious interference with contract or with

business relations); *see also*, *Springer*, 2017 WL 4684628, at *7 (endorsing *Zumwalt v. Jones Cty. Bd. of Sup'rs*, 19 So. 3d 672, 688 (Miss. 2009) ("Tortious interference with business relations and contracts requires proof of malice as an essential element. Therefore, the MTCA does not apply to these torts)).

Under Mississippi law, a cause of action for this malicious interference with business relations exists when "one engages in some act with a malicious intent to interfere and injure the business of another, and injury does in fact result." *Cenac v. Murry*, 609 So. 2d 1257, 1271 (Miss. 1992) (citation omitted). In addition, the acts must be done "without right or justifiable cause on the part of the defendant (which constitutes malice)." *Biglane v. Under The Hill Corp.*, 949 So. 2d 9, 16 (Miss. 2007). Although the Plaintiffs allege that Randle acted maliciously, they have not brought forth any evidence that Randle's actions in delaying Wrecker Works' addition to the rotation were malicious or that the delay was otherwise "without right or justifiable cause." *See id*. Without more, this conclusory allegation is insufficient to meet the Plaintiffs' burden of designating specific facts showing that there is a genuine issue for trial. *Little*, 37 F.3d at 1075.

*Conclusion*

Because the Plaintiffs failed to establish several essential elements of their claims as fully explained above, the Defendants' Motion for Summary Judgment [57] is GRANTED, and all claims are DISMISSED with prejudice. This CASE is CLOSED.

IT IS SO ORDERED on this, the 14th day of November, 2017.

 /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE